O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

EMIL SHAHTOUT, by and through his guardian ad litem, SOUHILA SHAHTOUT,

Plaintiff,

v.

CALIFORNIA PSYCHCARE, INC.; INLAND REGIONAL CENTER; DAVID OCHOA, in his individual capacity; MAXWELL CARRIER, in his individual capacity; and DOES 1-10, inclusive,

Defendants.

Case No. 5:21-cv-00308-JWH-SHKx

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT IRC'S MOTION TO DISMISS [ECF No. 43] AND DENYING THE PSYCHCARE DEFENDANTS' MOTION TO COMPEL BINDING ARBITRATION [ECF No. 44]**

Plaintiff Emil Shahtout is a young man with Autism Spectrum Disorder. In connection with his condition, Shahtout received services from Defendants Inland Regional Center ("IRC") and California Psychcare, Inc.  Shahtout alleges that two California Psychcare employees intentionally and unlawfully battered and assaulted him.  IRC now argues that Shahtout failed to exhaust his administrative remedies before filing this action, and California Psychcare contends that the Court should compel binding arbitration.

Specifically, the Court addresses the following two motions:

- the motion of Defendant IRC to dismiss Shahtout's second amended complaint of with respect to IRC;[1] and

- the motion of Defendants California Psychcare, David Ochoa, and Maxwell Carrier (the "Psychcare Defendants") to compel binding arbitration.[2]

The Court finds those matters appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition,[3] for the reasons explained below, the Court orders that (1) IRC's Motion to Dismiss is **GRANTED**; and (2) the Psychcare Defendants' Arbitration Motion is **DENIED**.

---

[1]    Def.'s Motion to Dismiss Case as to Inland IRC (the "Motion to Dismiss") [ECF No. 43].

[2]    Defs.' Motion to Compel Arbitration (the "Arbitration Motion") [ECF No. 44].

[3]    The Court considered the following papers:  (1) Second Am. Compl. (the "Amended Complaint") [ECF No. 40]; (2) the Motion to Dismiss (including its attachments); (3) Pl.'s Opp'n to the Motion to Dismiss (the "MTD Opposition") [ECF No. 49]; (4) Def.'s Reply in Supp. of the Motion (the "MTD Reply") [ECF No. 52]; (5) the Arbitration Motion; (6) Suppl. to the Arbitration Motion [ECF No. 46]; (7) Pl.'s Opp'n to the Arbitration Motion (the "Arbitration Opposition") [ECF No. 50] (including its attachment); and (8) Defs.' Reply in Supp. of the Arbitration Motion (the "Arbitration Reply") [ECF No. 53].

# I.  BACKGROUND

## A.    Procedural Background

Shahtout commenced this action in February 2021,[4] and he filed the operative Amended Complaint in June.[5]  IRC filed its Motion to Dismiss in July, and the Psychcare Defendants filed their Arbitration Motion the same day.  Both motions are fully briefed.

## B.    Factual Background

### 1.    Shahtout's Allegations

This case involves a series of allegations pertaining to certain service providers' assault of a young man who has Autism Spectrum Disorder.

Shahtout alleges claims for relief for:  (1) violations of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12182(a), *et. seq.* (the "ADA"); (2) retaliation under the ADA; (3) violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, *et. seq.* (the "Rehabilitation Act"); (4) retaliation under the Rehabilitation Act; (5) violation of the Unruh Civil Rights Act, Cal. Civ.  Code §§ 51, *et. seq.* (the "Unruh Act"); (6) violation of Cal. Gov't Code § 11135; (7) battery; (8) assault; (9) intentional infliction of emotional distress; (10) negligence; (11) negligent supervision; and (12) negligent hiring and retention.[6]  The facts as alleged in the Amended Complaint are as follows:

Shahtout is a 22-year-old man with Autism Spectrum Disorder and Intellectual Disability (Moderate).[7]  Shahtout is qualified as an individual with a disability under the ADA and the Unruh Act, and he is eligible for regional

---

[4]    *See* Compl. [ECF No. 1].  Unless otherwise noted, all dates are in 2021.
[5]    *See* Amended Complaint.
[6]    *See id.*
[7]    *Id.* at ¶ 21.

center services.[8]  In 2008, Shahtout's case was transferred to IRC.[9]  IRC is a non-profit agency that provides support to people with intellectual disabilities.[10]

IRC contracts with California Psychcare, one of California's largest service providers for people with Autism and other developmental disabilities.[11] Through that contract, California Psychcare provides regional center services to consumers throughout the Inland Empire.[12]  From March 2018 through June 2019, Shahtout received regional center services from California Psychcare.[13] Ochoa and Carrier are California Psychcare employees who provided services at Shahtout's home on February 19, 2019, from 1:00 p.m. to 9:00 p.m.[14]

While at Shahtout's home, Carrier threw Shahtout to the floor, and— along with Ochoa—dragged Shahtout approximately 30 feet to a different room.[15]  Carrier then forcibly restrained Shahtout, disrupting his breathing and causing his face to turn red.[16]  Carrier also struck Shahtout on the side of the head.[17]  Much of this incident was caught on camera.[18]

Following this incident, Carrier and Ochoa were removed from Shahtout's case.[19]  They were not, however, terminated from California Psychcare.[20]

---

[8]     *Id.* at ¶¶ 4 & 5.
[9]     *Id.* at ¶ 6.
[10]    *Id.* at ¶ 12.
[11]    *Id.* at ¶ 8.
[12]    *Id.* at ¶ 9.
[13]    *Id.* at ¶ 7.
[14]    *Id.* at ¶ 24.
[15]    *Id.* at ¶ 26.
[16]    *Id.* at ¶ 28.
[17]    *Id.* at ¶ 29.
[18]    *See, e.g.*, *id.* at ¶ 27.
[19]    *Id.* at ¶ 31.
[20]    *Id.*

In April 2019, Shahtout's mother and guardian, Souhila Shahtout, communicated with IRC and California Psychcare regarding the abuse that Shahtout endured.[21]  On April 23, she showed IRC Case Service Coordinator Cathy Brubaker videos of the incident.[22]  California Psychcare subsequently prepared a Special Incident Report, which indicated that Shahtout experienced physical restraint/abuse.[23]  However, Brubaker did not report the incident to Adult Protective Services ("APS"),[24] despite IRC's zero-tolerance policy regarding abuse and IRC's duty to report any instance of an employee abusing a consumer.[25]

Shahtout's mother showed the video of the incident to Shahtout's teacher from Lake Elsinore School District.[26]  The teacher reported the incident to APS on May 22, 2019.[27]  The APS report was cross-reported to IRC.[28]  Despite receiving the report, IRC did not launch "an immediate, thorough, and independent investigation," as required by IRC's contract with the State.[29]

Eight days later, California Psychcare transmitted a letter to Shahtout's mother informing her that California Psychcare would no longer provide services to Shahtout.[30]  According to California Psychcare, the reasons for terminating its services to Shahtout were "due to barriers in maintaining consistent staff and Emil's current/future needs falling outside the scope of

---

[21]   *Id.* at ¶ 34.
[22]   *Id.*
[23]   *Id.* at ¶ 35.
[24]   *Id.* at ¶ 36.
[25]   *Id.* at ¶ 20.
[26]   *Id.* at ¶ 37.
[27]   *Id.* at ¶ 38.
[28]   *Id.* at ¶ 39.
[29]   *Id.*
[30]   *Id.* at ¶ 41.

SIT's [*i.e.*, Specialized Individual Training] practice."[31]  California Psychcare advanced that justification despite the facts that Shahtout's needs and disability had not changed[32] and that California Psychcare had already provided services to Shahtout for more than a year.[33]  Shahtout alleges that California Psychcare terminated Shahtout's services "in retaliation for the APS report and investigation[.]"[34]

As a result of California Psychcare's decision to terminate Shahtout's services, and despite Shahtout's mother's best efforts to find replacement care, Shahtout did not receive the services to which he was legally entitled for several months.[35]

On July 16, 2019, Shahtout filed a complaint with the State of California Health and Human Services Agency-Department of Developmental Services, pursuant to Cal. Welf. & Inst. Code § 4731.[36]  A copy of Shahtout's complaint was forwarded to IRC, which ultimately prompted IRC to investigate the allegations of abuse against the California Psychcare employees.[37]

After conducting its investigation, IRC determined the following:
Emil Shahtout was unnecessarily restrained, the physical restraints did not follow best practices principles for the use of physical interventions, there was no emergency situation that required Emil to be held on the floor for prolonged periods of time, and [California Psychcare] did not comply with WIC Section 4502(b)(8) or their

---

[31]   *Id.* at ¶ 42.
[32]   *Id.*
[33]   *Id.* at ¶ 7.
[34]   *Id.* at ¶ 41.
[35]   *Id.* at ¶ 43.
[36]   *Id.* at ¶ 44.
[37]   *Id.*

Program Design when staff physically restrained Emil to mitigate Emil's aggressive behavior.[38]

Since the incident, Shahtout has experienced tics and other physical symptoms that might be a result of the alleged abuse.[39]  The presence of those tics caused a surgeon to cancel a scheduled operation that was intended to improve Shahtout's mobility issues.[40]  In addition, Shahtout is no longer able or willing to engage in numerous physical and social activities that he enjoyed before the incident.[41]  Finally, Shahtout developed severe fears associated with the incident.[42]  For example, Shahtout still has nightmares about the incident and wakes up yelling "David is closed!" or "Max is closed!"[43]

### 2.    Arbitration Agreement

According to her declaration, in December 2017, Souhila[44] and her son were in desperate need of services.[45]  When Souhila enrolled with California Psychcare, she received a large packet of papers—which included an Arbitration Agreement—to complete and sign for Shahtout to receive services.[46]  No one told Souhila that the paperwork included an Arbitration Agreement nor that she was waiving her son's right to file a lawsuit against California Psychcare.[47]  Similarly, no one told Souhila what "BHT Malpractice" means, nor did anyone

---

[38]    *Id.* at ¶ 46.

[39]    *Id.* at ¶ 49.

[40]    *Id.*

[41]    *Id.* at ¶ 50.

[42]    *Id.* at ¶ 51

[43]    *Id.*

[44]    The Court refers to Ms. Shahtout by her first name to avoid confusion; no disrespect is intended.

[45]    Decl. of Souhila Shahtout in Supp. of the Opposition (the "Souhila Declaration") [ECF No. 50-1] ¶ 3.

[46]    *Id.* at ¶¶ 3 & 6.

[47]    *Id.* at ¶¶ 9 & 12.

1    advise her regarding the legal significance of the Arbitration Agreement.[48]

2    Souhila did not feel that she could negotiate the terms of the California

3    Psychcare agreement; she believed that needed to sign the paperwork presented

4    to her in order for her son to receive services.[49]

5          The Arbitration Agreement provides that:

6          All disputes arising out of or in relation to this agreement to provide

7          BHT shall first be referred to mediation, before, and as a pre-

8          condition of, the initiation of arbitration.  The mediator shall be a

9          neutral third party chosen by agreement.  The cost of such

10         mediation, if any, shall be split equally, unless otherwise agreed.  In

11         the event that mediation is unsuccessful, any unresolved controversy

12         related to this agreement should be submitted to and settled by

13         binding arbitration in accordance with the rules of the American

14         Arbitration Association in effect at the time the demand for

15         arbitration is filed.  The prevailing party in arbitration or collection

16         proceedings shall be entitled to recover a reasonable sum for

17         attorney's fee.  If any provision of this arbitration agreement is held

18         invalid or unenforceable, the remaining provisions shall remain in

19         full force and shall not be affected by the invalidity of any other

20         provision.[50]

21

22

[48]    *Id.* at ¶¶ 10 & 11.  Neither the Arbitration Motion nor its attachments
23   define "BHT."  That omission adds power to Souhila's declaration that she
does not know what BHT stands for and that nobody explained the term to her.
24   Souhila Declaration ¶ 10.

25   [49]    *Id.* at ¶ 9.

[50]    Decl. of Rita R. Kanno in Supp. of the Motion (the "<u>Kanno Declaration</u>")
26   [ECF No. 44] ¶ 2 & Ex. 1 (the "<u>Arbitration Agreement</u>").  The Psychcare
Defendants failed to file their declaration and exhibits as attachments to their
27   Arbitration Opposition, in violation of this Court's Local Rules.  *See* L.R. 11-5.2.
The Court admonishes Defendants and their counsel henceforth to comply
28   assiduously with the Local Rules.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(1)—Lack of Subject-Matter Jurisdiction

As the party seeking to invoke the federal court's jurisdiction, plaintiffs have the burden of alleging specific facts sufficient to prove Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Where a party lacks standing, Rule 12(b)(1) allows a party to move for dismissal based on lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Plaintiffs bear the burden of demonstrating standing "for each claim" and "for each form of relief" that they seek.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006) (internal citations and quotations omitted).  The court should dismiss an action where the face of the complaint does not demonstrate a basis for standing.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); Fed. R. Civ. P. 8(a) & 12(b)(1).

### B.  Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).  Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted).  Accordingly, to

survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

**C.   Rule 15(a)—Leave to Amend**

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).  The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Therefore, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

**D.   Arbitration**

Pursuant to the Federal Arbitration Act (the "FAA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  While the FAA reflects a "liberal federal policy favoring arbitration," *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  "Because the FAA mandates that 'district courts shall direct the parties to proceed to arbitration on issues as to which an

arbitration agreement has been signed,' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citations and emphasis omitted) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)).

In evaluating the validity of an arbitration agreement, federal courts "apply ordinary state-law principles that govern the formation of contracts," *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)), "while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration," *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).

### III.  DISCUSSION

**A.    Motion to Dismiss**

Of his 12 claims for relief in this action, Shahtout asserts the following seven against IRC:  (1) violation of Title III of the ADA;[51] (2) violation of the Rehabilitation Act;[52] (3) violation of the Unruh Act;[53] (4) violation of Cal. Gov't Code §§ 11135, *et seq.*;[54] (5) negligence;[55] (6) negligent supervision;[56] and (7) negligent hiring and retention.[57]  Through its Motion to Dismiss, IRC seeks the dismissal of those seven claims.

---

[51]    Amended Complaint ¶¶ 52-66.
[52]    *Id.* at ¶¶ 79-89.
[53]    *Id.* at ¶¶ 100-112.
[54]    *Id.* at ¶¶ 113-119.
[55]    *Id.* at ¶¶ 142-148.
[56]    *Id.* at ¶¶ 149-155.
[57]    *Id.* at ¶¶ 156-167.

1    IRC argues that Shahtout failed to exhaust his administrative remedies

2    and that the Court therefore lacks jurisdiction to hear this case.[58]  Shahtout

3    counters that (1) failure to exhaust is an affirmative defense and should not be

4    decided on a motion to dismiss;[59] and (2) regardless, he did exhaust his

5    administrative remedies.[60]

6    IRC is a non-profit agency established by the Lanterman Act,

7    Cal. Welf. & Inst. Code §§ 4500-4905.2.[61]  "The Lanterman Act provides a

8    specified procedure for any issues arising from services rendered thereunder."

9    *Bouslog v. Care Options Mgmt. Plans and Supportive Services, LLC*, 459

10   F. Supp. 3d 1281, 1284 (N.D. Cal. 2020) (citing Cal. Welf. & Inst. Code

11   §§ 4706, 4710.5–4710.9, 4711.5, & 4712.5); *see also Conservatorship of Whitley*,

12   155 Cal. App. 4th 1447, 1459 (2007) ("the Lanterman Act guarantees an

13   applicant for or recipient of services or his or her representative 'who is

14   dissatisfied with any decision or action of the service agency' the right to an

15   administrative fair hearing").  This procedure is known as the Fair Hearing

16   Process.  *Id.*

17   When claims are asserted against service providers with respect to a

18   consumer's individual program plan ("IPP"), courts lack jurisdiction until a

19   plaintiff has exhausted the Fair Hearing Process.  *See Bouslog*, 459 F. Supp. 3d at

20   1286 (dismissing a similar complaint, which alleged violations of the ADA, the

21   Rehabilitation Act, Cal. Gov't Code § 11135, and the Unruh Act, as well as

22   negligence, for failure to exhaust); *see also Kimiko v. Alta California Regional*

23   *Center*, 2020 WL 6146451, at *5 (E.D. Cal. Oct. 20, 2020) (dismissing claims for

24   violations of the Unruh Act and the Rehabilitation Act for failure to exhaust).

25

26   [58]    *See* Motion to Dismiss 3:21-6:24.

27   [59]    MTD Opposition 6:26-7:4.
     [60]    *Id.* at 8:7-10:19.

28   [61]    *See, e.g.*, Amended Complaint ¶ 12; Motion to Dismiss 3:22-23.

-12-

1   Shahtout denies that exhaustion is required.[62]  Moreover, he argues that
2   even if it is required, he did exhaust his administrative remedies.[63]  Shahtout
3   contends that he was not required to complete the Lanterman Act's Fair
4   Hearing Process, but was instead required merely to satisfy its Consumer
5   Complaint Process.[64]

6       Shahtout concedes that the Fair Hearing Process is the proper
7   administrative remedy if "one disagrees with the nature, scope, or amount of
8   services that are being offered by the regional center," but he argues that he
9   need not undergo that process in this instance because "it can only be filed if
10  one is appealing a decision of the regional center about the services they are
11  requesting or receiving."[65]  IRC counters that Shahtout's claims against it are
12  related to its IPP services and are therefore expressly subject to the Fair Hearing
13  Process.[66]  The Court agrees with IRC.

14      Shahtout's claims against IRC are directly related to the services that he
15  did and did not receive pursuant to his IPP.  As discussed above and as explained
16  by district courts in this Circuit in *Bouslog* and *Kimiko*, Shahtout must first
17  exhaust the Fair Hearing Process before litigating a claim in this Court.

18      Accordingly, Shahtout's claims against IRC are **DISMISSED** for lack of
19  jurisdiction.

20  **B.    Motion to Compel Arbitration**

21      The Psychcare Defendants argue that the Arbitration Agreement requires
22  Shahtout to submit his claims to arbitration.[67]  In his Arbitration Opposition,

23

24  _____
        [62]   MTD Opposition 6:26-7:4.
25      [63]   *Id.* at 8:5-10:19.
26      [64]   *Id.*
        [65]   *Id.* at 8:13-18.
27      [66]   MTD Reply 5:22-24.
28      [67]   *See, e.g.*, Arbitration Motion 1:3-4.

1    Shahtout responds that the Court should not compel arbitration because

2    (1) Ochoa and Carrier are not parties to the Arbitration Agreement; (2) the

3    Arbitration Agreement is invalid because it fails to comply with California law

4    (specifically, Cal. Bus. & Prof. Code § 4999.20); and (3) the Arbitration

5    Agreement is substantively and procedurally unconscionable, and, therefore, it

6    cannot be enforced.[68]  Because the Court finds that the Arbitration Agreement is

7    unconscionable under California law, it addresses only that argument.

8            In California, courts may refuse to enforce contracts that they find

9    unconscionable.  Cal. Civ. Code § 1670.5(a).  Alternatively, courts may sever the

10   unconscionable clause or limit its application.  *Id.*  "[U]nconscionability has

11   both a procedural and a substantive element[.]"  *Armendariz v. Found. Health*

12   *Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (internal quotations omitted).

13   Procedural unconscionability focuses on "oppression or surprise due to unequal

14   bargaining power[.]"  *Id.* (internal quotations omitted).  Substantive

15   unconscionability addresses whether a contract yields "overly harsh or one-

16   sided results."  *Id.* (internal quotations omitted).

17           To find a contract unconscionable, a court applying California law must

18   determine that the contract is both procedurally ***and*** substantively

19   unconscionable.  *Id.*  However, procedural and substantive unconscionability

20   "need not be present in the same degree."  *Id.*  "Essentially a sliding scale is

21   invoked which disregards the regularity of the procedural process of the contract

22   formation, that creates the terms, in proportion to the greater harshness or

23   unreasonableness of the substantive terms themselves."  *Id.* (internal quotation

24   omitted).  The Court addresses both substantive and procedural

25   unconscionability below.

26

27

28   [68]       *See, e.g.*, Arbitration Opposition 1:2-11.

-14-

1.     **Substantive Unconscionability**

Shahtout argues that the Arbitration Agreement is substantively unconscionable because it (1) lacks bilaterality; (2) forces Shahtout to split the cost of a mandatory mediation and the costs of arbitration; and (3) contains an unenforceable fee-shifting provision.[69]

a.     **Bilaterality**

In California, mandatory arbitration agreements must possess "some 'modicum of bilaterality'" to be enforceable. *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) (quoting *Armendariz*, 22 Cal. 4th at 117). In *Armendariz*, the California Supreme Court held that an arbitration agreement that imposed arbitration requirements on employees but not employers was unenforceable. *Armendariz*, 22 Cal. 4th at 117-18. The Court found that while "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope . . . the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." *Id.* at 118; *see also Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1332 (1999) ("Faced with the issue of whether a unilateral obligation to arbitrate is unconscionable, we conclude that it is. The party who is required to submit his or her claims to arbitration foregoes the right, otherwise guaranteed by the federal and state Constitutions, to have those claims tried before a jury.").

Shahtout argues persuasively that the Arbitration Agreement is one-sided because it binds only Shahtout. To support that argument, Shahtout points out that the Arbitration Agreement relates only to the "agreement to provide BHT" and "ANY ISSUE RELATED TO BHT MALPRACTICE[.]"[70] In their

---

[69]     *Id.* at 13:1-16:23.

[70]     Arbitration Opposition 13:21-26.

Arbitration Reply, the Psychcare Defendants cite no authority to suggest that the Arbitration Agreement has the "modicum of bilaterality" required under California law.[71]  Instead, the Psychcare Defendants simply dismiss the argument as "erroneous" and contend that the lack of mutuality fails to "shock the conscious[.]"[72]  The Psychcare Defendants effectively concede that the Arbitration Agreement lacks bilaterality.

### b.    Cost-Splitting

Shahtout maintains that the Arbitration Agreement forces Shahtout to split the costs of mediation and arbitration and is therefore unconscionable.[73]  The Court agrees.

Shahtout argues, and the Psychcare Defendants do not deny in their Arbitration Reply, that the Arbitration Agreement's silence with respect to arbitration costs triggers the default rule of arbitration.[74]  The default rule is that administrative costs of arbitration are split equally and that legal costs are borne individually.  *See* Cal. Civ. P. Code § 1284.2 ("[u]nless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit").  In addition, the Arbitration Agreement provides that the mediation cost "shall be split equally, unless otherwise agreed."[75]

---

[71]    *See* Arbitration Reply 8:20-25.
[72]    *Id.* at 8:20-21.
[73]    Arbitration Opposition 15:5-16:23.
[74]    *Id.* at 15:20-21.
[75]    Arbitration Agreement.

1   California courts have found some cost-splitting provisions of arbitration
2   agreements to be unconscionable.  In *Armendariz*, for example, the California
3   Supreme Court found that a cost-splitting provision in an employment
4   agreement "poses a significant risk that employees will have to bear large costs
5   to vindicate their statutory right against workplace discrimination, and therefore
6   chills the exercise of that right."  *Armendariz*, 24 Cal. 4th at 110.[76]  The Ninth
7   Circuit has held similarly.  *See Circuit City*, 279 F.3d at 894 (arbitration
8   agreement "also requires the employee to split the arbitrator's fees with Circuit
9   City.  This fee allocation scheme alone would render an arbitration agreement
10  unenforceable.").

11  Courts have also found cost-shifting provisions unconscionable in
12  contexts beyond employment agreements.  In *Ting v. AT&T*, 319 F.3d 1126 (9th
13  Cir. 2003), the Ninth Circuit found that a cost-splitting provision between a
14  telecommunications company and its customers was unconscionable because "it
15  imposes on some consumers costs greater than those a complainant would bear
16  if he or she would file the same complaint in court."  *Id.* at 1151.  Moreover, even
17  though that agreement had nothing to do with employment relations, the court
18  found that it was "indistinguishable" from the agreement in *Circuit City* with
19  respect to cost-splitting.  *Id.*; *see also Acorn v. Household Int'l, Inc.*, 211
20  F. Supp. 2d 1160, 1174 (N.D. Cal. 2002) (finding cost splitting agreement
21  between lender and borrower unconscionable and holding that a "party
22  imposing arbitration may not impose any type of cost not incident to a judicial
23  action").

24
25

---

26  [76]  Because the *Armendariz* court found that "the imposition of substantial
27  forum fees is contrary to public policy, and is therefore grounds for invalidating
    or revoking an arbitration agreement and denying a petition to compel
    arbitration" it held that "the cost issues should be resolved not at the judicial
28  review stage but when a court is petitioned to compel arbitration."  *Id.*

In their Arbitration Reply, the Psychcare Defendants cite no authority rebutting the argument that a cost-splitting provision such as the one at issue here is unconscionable.  Instead, the Psychcare Defendants rely on the general proposition that "parties are free to contract as they see fit and their agreements should be honored and upheld."[77]  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("parties are generally free to structure their arbitration agreements as they see fit").  In relying solely on that argument, the Psychcare Defendants miss the mark.  The Psychcare Defendants overlook that courts still "apply ordinary state-law principles that govern the formation of contracts" to arbitration agreements.  *Ingle*, 328 F.3d at 1170.  Additionally, the Psychcare Defendants ignore that *Armendariz*, *Circuit City*, *Ting*, and *Acorn* were all decided ***after*** *Volt*, which is the only authority that they cite in rebuttal to the argument that the cost-splitting provision is unconscionable.  The courts in those cases understood the general principle that parties are free to structure arbitration agreements as they see fit, but, nevertheless, those courts found the agreements before them unconscionable.  The Court therefore finds that the cost-splitting provision is substantively unconscionable.

### c.     Fee-Shifting

"When parties agree to resolve statutory claims through arbitration, it is reasonable to infer that they consent to abide by the substantive and remedial provisions of the statute."  *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1087 (1999).  Arbitration agreements must therefore allow parties to vindicate fully their statutory cause of action in the arbitral forum. *See id.* When arbitration cannot allow parties to enforce their statutory rights, therefore, the relief that is not allowed in arbitration "should be decided in a

---

[77]     Arbitration Reply 8:15-16.

1  judicial forum." *Id.* at 1088; *see also Graham Oil Co. v. ARCO Prod. Co., a Div.*
2  *of Atl. Richfield Co.*, 43 F.3d 1244, 1247 (9th Cir. 1994), *as amended* (Mar. 13,
3  1995) ("However, the fact that franchisees may agree to an arbitral forum for the
4  resolution of statutory disputes in no way suggests that they may be forced by
5  those with dominant economic power to surrender the statutorily-mandated
6  rights and benefits that Congress intended them to possess.").

7      Shahtout argues that the provision of the Arbitration Agreement that
8  entitles the "prevailing party in arbitration or collection proceedings . . . to
9  recover a reasonable sum for attorney's fee" negates the fee-shifting provision
10  of the ADA and the Unruh Civil Rights Act intended to allow plaintiffs to
11  pursue their civil rights claims.[78]

12      Neither party cites case law addressing whether an arbitration agreement
13  that includes a fee-shifting provision involves the surrender of statutorily-
14  manded rights and benefits that the legislature intended parties to possess.
15  Shahtout does not even cite the specific provisions of the ADA or the Unruh
16  Civil Rights Act to which he refers.  Because the Court has already found that
17  the cost-splitting provision renders the Arbitration Agreement substantively
18  unconscionable and that it lacks bilaterality, and because the briefing from both
19  sides on the fee-shifting issue is inadequate, the Court need not rule on whether
20  the Arbitration Agreement's fee shifting provision is likewise unconscionable.

21      **2.    Procedural Unconscionability**

22      Shahtout argues that the Arbitration Agreement is procedurally
23  unconscionable because it is a contract of adhesion that Souhila neither read nor
24  understood.  In addition, Shahtout argues that the Arbitration Agreement is
25  procedurally unconscionable because it does not provide adequate notice of

---

[78]    Arbitration Opposition 14:22-25; *see also* Arbitration Agreement.

-19-

1   which rules would govern arbitration.  The Court agrees with Shahtout and
2   addresses each issue in turn.

3                  **a.**      **Contract of Adhesion**

4          The Psychcare Defendants argue that whether Souhila read or understood
5   the contract before she signed it is irrelevant.[79]  To support that argument, the
6   Psychcare Defendants cite *Bolanos v. Khalatian*, 231 Cal. App. 3d 1586 (1991).  In
7   that case, the court observed that the "general rule" is "that one who signs an
8   agreement cannot avoid its terms on the ground that he failed to read it[.]"  *Id.*
9   at 1590.  The Psychcare Defendants ignore, however, that that "general rule"
10  does not apply to contracts of adhesion.  *Id.*  As a threshold matter, therefore,
11  the Court first addresses whether the Arbitration Agreement is a contract of
12  adhesion—an issue on which the parties disagree.[80]

13         "A contract of adhesion is a standardized contract that is imposed and
14  drafted by the party of superior bargaining strength and relegates to the other
15  party only the opportunity to adhere to the contract or reject it."  *Higgins v.*
16  *Superior Ct.*, 140 Cal. App. 4th 1238, 300 (2006), *as modified* (July 10, 2006)
17  (internal quotations omitted).

18         The first issue is whether the drafting party—in this instance, California
19  Psychcare—had superior bargaining power.  *Id.*  The Psychcare Defendants
20  argue that Shahtout and his mother "had the ultimate position of strength"
21  because they "could have rejected the Agreement without any adverse
22  consequence[.]"[81]  That blithe assertion lacks any supporting evidence.
23  According to Souhila's sworn declaration, in December 2017 she was "in
24  desperate need of services" because, without services, she could not depart the
25
26  _____
27  [79]     Arbitration Motion 6:19-26.
    [80]     *Compare* Arbitration Reply 6:22-28 *with* Arbitration Opposition 18:3-19:2.
28  [81]     Arbitration Reply 6:24-27.

house and leave Shahtout alone.[82]  One's inability to leave one's house is without a doubt an "adverse consequence."  Accordingly, the Court finds that the Psychcare Defendants were in a superior bargaining position.

The second issue is whether the Psychcare Defendants relegated Shahtout "only the opportunity to adhere to the contract or reject it." *Id.*  The Psychcare Defendants effectively concede this issue when they state that Shahtout's only choice was the "right to say 'no' to the Agreement[.]"[83]  Accordingly, the Court finds that the Arbitration Agreement is a contract of adhesion.

In view of that finding, "the general rule, that one who signs an agreement cannot avoid its terms on the ground that he failed to read it," *Bolanos*, 231 Cal. App. 3d at 1590, is not applicable.  Accordingly, in deciding whether the Arbitration Agreement is unconscionable, the Court considers Souhila's admission that she neither read nor understood the Arbitration Agreement before signing it, which weighs in favor of procedural unconscionability.[84]

**b.    Arbitration Rules**

Arbitration Agreements must provide "adequate notice of applicable rules" for arbitration. *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 721 (2004).  In *Fitz*, for example, the court found an arbitration agreement unenforceable because it failed to specify which American Arbitration Association (the "AAA") rules applied to the agreement. *Id.*  The court in *Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003), reached a similar conclusion.  In that case, the court refused to enforce an agreement because the agreement did not specify which arbitration rules of the Better Business Bureau would be used pursuant to the agreement. *Id.* at 1406 ("Here is the oppression:  The inability to receive full

---

[82]    Souhila Declaration ¶ 3.
[83]    Arbitration Reply 7:2-4.
[84]    Souhila Declaration ¶¶ 6-12.

1   relief is artfully hidden by merely referencing the Better Business Bureau

2   arbitration rules, and not attaching those rules to the contract for the customer

3   to review.  The customer is forced to go to another source to find out the full

4   import of what he or she is about to sign—and must go to that effort *prior* to

5   signing." (emphasis in original)).

6          Here, the Court finds the Arbitration Agreement's rules provision to be

7   indistinguishable from the those in *Fitz* and *Harper*.  The Arbitration Agreement

8   provides that arbitration must take place "in accordance with the rules of the

9   American Arbitration Association in effect at the time the demand for

10  arbitration is filed."[85]  At the time that the Opposition was filed, the AAA's

11  website included 55 different categories of rules for various matters.[86]  The

12  Arbitration Agreement does not indicate which set of rules would apply, and the

13  Psychcare Defendants provide no argument to the contrary in their Arbitration

14  Reply.  The Court finds that the Arbitration Agreement's failure to provide

15  notice of the rules applicable for the arbitration weighs in favor of a finding of

16  procedural unconscionability.

17         The Court finds that the Arbitration Agreement is both procedurally and

18  substantively unconscionable.  Accordingly, the Arbitration Motion is

19  **DENIED**.

20                        **IV.  CONCLUSION**

21         For the foregoing reasons, the Court hereby **ORDERS** as follows:

22

23  [85]     Arbitration Agreement.

24  [86]     Shahtout cites the "Rivers Declaration" in his Arbitration Opposition
    when asserting that fact.  *See* Arbitration Opposition 19:23.  No such declaration
    exists.  The Court assumes that this is an error on Shahtout's part.

25  Nevertheless, the assertion that there are a multitude of possible rules is easily
    confirmable by visiting the AAA's website at https://www.adr.org/active-rules.

26  The Court takes judicial notice of that fact *sua sponte*.  *See Bryan v. City of
    Carlsbad*, 297 F. Supp. 3d 1107, 1115 (S.D. Cal. 2018) ("[t]he Court may take

27  judicial notice sua sponte"); *see also* Fed. R. Evid. 201 (a district court may
    "take judicial notice on its own" and can take judicial notice of facts that are

28  "not subject to reasonable dispute").

1.    IRC's Motion to Dismiss is **GRANTED**, and Shahtout's seven claims against IRC are **DISMISSED** for lack of jurisdiction.

2.    The Psychcare Defendants' Arbitration Motion is **DENIED**.

3.    The Psychcare Defendants are **DIRECTED** to file their Answer to Shahtout's Amended Complaint no later than February 11, 2022.

**IT IS SO ORDERED.**

Dated: January 25, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE

-23-